UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| YASMANI TOYO LARA,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ et al.,<br><br>Respondents. | ) | Civil No. 26-14415-LTS |

MEMORANDUM AND ORDER ON PETITION FOR
A WRIT OF HABEAS CORPUS (DOC. NO. 1)

October 16, 2026

SOROKIN, J.

Yasmani Toyo Lara, a Cuban national, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his ongoing immigration detention as unlawful. See Doc. No. 1. For the reasons explained below, the petition is ALLOWED.

I. BACKGROUND

Toyo Lara was born in Cuba in 1995 and, with his father and stepmother, came to the United States in 2012 as a refugee. Id. ¶¶ 21–22; Doc. No. 10-1 ¶ 7. In 2015, Toyo Lara became a Lawful Permanent Resident. Doc. No. 1 ¶ 23; Doc. No. 10-1 ¶ 7. In 2018, he was convicted of state criminal charges in New Haven, Connecticut, including third-degree burglary and assault. Doc. No. 1 ¶ 24; Doc. No. 10-1 ¶ 8–11. He was released from incarceration in 2019 and was subsequently convicted of violating conditions of his probation in 2020 and 2022. Doc. No. 10-1 ¶¶ 13, 15. Over the past seven years, Toyo Lara earned his commercial driver's license and obtained work, first as a truck driver, then in construction, and most recently as an electrician and member of a local union. Doc. No. 1 ¶ 25. Prior to his detention by ICE, Toya Lara lived in

New Haven with his United States–citizen partner, their children, and his mother, who came to the United States from Cuba after suffering multiple strokes. Id. ¶¶ 26–27.

In April 2019, ICE issued a Notice to Appear charging Toyo Lara as removable based on certain criminal conduct, and in April 2021, it initiated removal proceedings against him. Doc. No. 10-1 ¶¶ 12, 14. On December 17, 2025, ICE "encountered and detained [Toyo Lara] as part of a targeted enforcement action," apparently at his workplace. Id. ¶ 16; Doc. No. 1 ¶ 28. He has been detained by ICE ever since. Doc. No. 1 ¶ 29. On March 10, 2026, Toyo Lara received a bond hearing at which an Immigration Judge ("IJ") denied bond after finding he posed a danger to the community by clear and convincing evidence. Doc. No. 10-7.

On March 25, 2026, an IJ ordered Toyo Lara removed to Cuba. Doc. No. 1 ¶ 30; Doc. No. 10-1 ¶ 17. Toyo Lara did not appeal, and the removal order became administratively final on April 24, 2026. Doc. No. 10-1 ¶ 18. Toyo Lara alleges that Cuba would not accept him "because of poor relations between Cuba and the United States" and his criminal history, Doc. No. 1 ¶¶ 31–32, and the respondents do not dispute this allegation.

On April 27, 2026, ICE served Toyo Lara with a notice of its intent to remove him to Mexico. Id. ¶ 33; Doc. No. 10-4. Toyo Lara sent his deportation officer a letter expressing his fear of being removed to Mexico. Doc. No. 1 ¶¶ 34–35. USCIS interviewed Toyo Lara and issued a negative fear determination. Doc. No. 10-1 ¶¶ 20–22. Toyo Lara alleges that the "denial form he received did not permit him to appeal the decision" to an IJ, Doc. 1 ¶ 36; the respondents do not contradict that allegation, nor do they submit documentary evidence of the negative fear determination.

In May 2026, ICE transported Toyo Lara to a detention facility in Arizona. Id. ¶ 37. There, ICE officers "asked Cuban detainees to raise their hand if they wanted to go to Mexico."

Id. ¶ 38. Fearful of removal to Mexico, Toyo Lara did not raise his hand. Id. A week later, Toyo Lara was again asked if he wanted to go, and this time he raised his hand "because he wanted ICE to stop harassing him, and he had heard from other Cubans that ICE would not force him to cross the border." Id. ¶ 39. On June 1, 2026, Toyo Lara (along with others) was transported by bus to the United States–Mexico border. Id. ¶ 40. There, an ICE officer told him that if he wanted to go to Mexico, he would need to walk across the border himself; a Mexican officer similarly told detainees on the bus that "Mexico would not force Cubans to enter, and that those who [did] not want to go to Mexico would not be required to go." Id. ¶¶ 40–41. Because of his fear, Toyo Lara stayed on the bus, was driven back to the Arizona detention center, and was subsequently transported back to detention facilities in New England. Id. ¶ 42.

On June 4, 2026, and July 22, 2026, ICE served Toyo Lara with two "notices of failure to comply pursuant to 8 CFR 241.4(g)." Doc. Nos. 10-5, -6. The first notice states, "On June 1, 2026, ICE attempted to remove you to Mexico and you failed to comply with this removal," and warned Toyo Lara, "[Y]ou are to remain in ICE custody until you demonstrate that you are making reasonable efforts to comply with the order of removal, and that you are cooperating with ICE's efforts to remove you." Doc. No. 10-5. The second notice reiterated the same June 1 "failure to comply." Doc. No. 10-6. According to an ICE declarant, Toyo Lara's "failure to comply stems from his expressed unwillingness to go to Mexico." Doc. No. 10-1 ¶ 23.

On two occasions in September 2026, Toyo Lara asked ICE officers about his removal status; he was told that Cuba would not accept him, that Mexico would accept him only if he went voluntarily, and that, as a result, there were no current plans to remove him. Doc. No. 1 ¶¶ 43, 45. The Mexican Consulate told Toyo Lara's partner that Mexico did not have travel documents for Toyo Lara and would accept him only if he agreed to go voluntarily. Id. ¶ 44.

The respondents do not contradict these allegations, nor do they represent that they intend to pursue removal to Cuba or Mexico. The ICE declarant says only that "ICE is actively working with ERO Headquarters to identify an alternate third country for removal." Doc. No. 10-1 ¶ 25. The respondents provide no timeline for such an alternate third-country removal, nor do they describe any specific efforts to secure Toyo Lara's removal.

On September 26, 2026, Toyo Lara filed this habeas petition, challenging his ongoing detention as unlawful and seeking release on an order of supervision. Doc. No. 1. The petition is now ripe for resolution. Doc. Nos. 10, 12. Toyo Lara has been in immigration detention for the past ten months. His order of removal became final on April 24, 2026, meaning he has been in post-removal-order detention for one week shy of six months.

## II. DISCUSSION

Noncitizens with final removal orders are subject to mandatory detention for 90 days to effectuate the removal, a clock that starts (as relevant here) on the date the removal order became administratively final. 8 U.S.C. § 1231(a)(1), (2). Toyo Lara's 90-day removal period ended on July 23, 2026. The Attorney General may detain certain noncitizens beyond the 90-day removal period, id. § 1231(a)(6), but only for such period as is "reasonably necessary to bring about the [noncitizen's] removal from the United States," Zadvydas v. Davis, 533 U.S. 678, 689 (2001). After a "presumptively reasonable period of detention" of six months, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing," and release is required once "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

The respondents do not dispute that this Court has jurisdiction over Toyo Lara's § 2241 petition challenging his immigration detention. See Doc. No. 10. They argue, instead, that his

ongoing detention is authorized by law, both because he has been detained for less than six months since his order of removal became final (if barely) and because ICE "intends to immediately remove [Toyo Lara] as soon as an alternative country is identified."[1] Id. at 9–10.

If six months or more had elapsed since Toyo Lara's order of removal became final—a milestone that will be reached in just over one week—the law is clear that Toyo Lara would need to simply "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," before the burden would shift to "the Government [to] respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701. Toyo Lara has been in immigration detention for ten months, but only five months plus twenty-two days of that detention has followed his final removal order, and thus he cannot avail himself of the distribution of burdens described in Zadvydas. See, e.g., Cruz Medina v. Noem, 794 F. Supp. 3d 365, 374–76 (D. Md. 2025) (describing distribution of burdens).

But the presumption of reasonableness is just that—a presumption. See, e.g., Phommachak v. Wesling, 816 F. Supp. 3d 201, 210 (D. Mass. 2026) ("[A]ny reading of Zadvydas that treats less than six months' detention as 'conclusively reasonable,' and thus

[1] To the extent the respondents argue that Toyo Lara's removal period was tolled because he would not voluntarily go to Mexico, see Doc. No. 10 at 5, 7; see also 8 U.S.C. § 1231(a)(1)(C), the Court rejects that argument. Toyo Lara contends, and the respondents do not dispute, that Mexico's policy is not to accept nonconsenting Cuban detainees such as Toyo Lara, and that ICE has not required Toyo Lara to go to Mexico. See Doc. No. 1 ¶¶ 40–46; Doc. No. 1-3; see also Doc. No. 12 at 16–17 & n. 6 (collecting cases). The record before the Court suggests the government did not undertake further efforts to secure Toyo Lara's removal to Mexico aside from requesting that he voluntarily agree to go. Respondents do not argue (and nothing in the record before the Court suggests) that Toyo Lara has failed to cooperate with or obstructed the government's efforts to secure travel documents, or that he has refused to comply with government orders or requirements in connection with his removal. See, e.g., Agbanyo v. Cabral, 518 F. Supp. 2d 326, 327–28 (D. Mass. 2007). Under these circumstances, the government cannot rely on Toyo Lara's decision not to voluntarily go to Mexico—particularly when he has repeatedly expressed a fear of going there—to toll his removal period.

automatically authorized under section 1231(a)(6), 'runs headlong into the Supreme Court's clear articulation of its holding as adopting a presumption of reasonableness before the six-month period expires.'" (emphases in original) (quoting Cruz Medina, 794 F. Supp. 3d at 374)). Toyo Lara may rebut that presumption by proving his detention is no longer authorized because there is no significant likelihood of his removal in the reasonably foreseeable future. See, e.g., Cruz Medina, 794 F. Supp. 3d at 375–76; Munoz-Saucedo v. Pittman, 789 F. Supp. 3d 387, 396–98 (D.N.J. 2025). At bottom, the "basic question" a habeas court must ask is "whether the detention in question exceeds a period reasonably necessary to secure removal," where reasonableness is measured "primarily in terms of the statute's basic purpose, namely, assuring the [noncitizen's] presence at the moment of removal." Zadvydas, 533 U.S. at 699–700.

On the record before the Court, Toyo Lara has carried his burden to show there is no significant likelihood of removal in the reasonably foreseeable future. Toyo Lara has shown that the government is not pursuing his removal to Cuba, his country of origin and the country designated on his removal order. He has further shown that he cannot be removed to Mexico, the only third country identified by the government, because Mexico's policy is to accept only those Cuban nationals who voluntarily agree to be removed to Mexico. See also, e.g., Constant v. Perry, No. 1:25-cv-01916 (RDA/WEF), 2026 WL 1463965, at *5 (E.D. Va. Feb. 11, 2026) (collecting cases). He submits a sworn declaration stating that ICE officials have told him there were no current plans to remove him because neither Cuba nor Mexico will accept him. Doc. No. 1-1 ¶¶ 23–26. Nothing in the record before the Court suggests circumstances might imminently change such that Toyo Lara's removal to either Cuba or Mexico would become viable, and the government has not identified any third country to which it might remove him.

The respondents tacitly concede these points, both by failing to respond to them and by asserting only that they are "actively working" to "identify an alternate third country for removal." Doc. No. 10-1 ¶ 25. This summary assertion is unsupported by any specific facts, detail, or supporting documents evidencing progress toward locating other suitable countries. Indeed, aside from attempts to persuade Toyo Lara to go voluntarily to Mexico, there is no evidence in the record of action or efforts undertaken to remove Toyo Lara during the preceding six months. And during the pendency of this matter, the respondents have not sought to remove Toyo Lara, nor have they given any indication the pertinent facts are likely to change, either between now and the six-month mark of Toyo Lara's post-order detention or beyond.

Toyo Lara has been detained for nearly six months since his removal order became final—and for ten months total—yet the respondents have specified no timeline for his removal, described no process of securing his removal to an alternate third country, and, indeed, have identified no particular alternate third country to which they might remove him. Cf. Siguenza v. Moniz, No. 25-cv-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sep. 25, 2025) (noting that respondents had not identified a third country, provided a timeline for removal, or evidenced any changed circumstances making removal likely, and emphasizing that "a 'chance' of removal within an unspecified period of time is not the same as a significant likelihood of removal in the reasonably foreseeable future"). Because Toyo Lara's removal is not significantly likely to occur in the reasonably foreseeable future, his continued detention is unreasonable, and he must be released. Zadvydas, 533 U.S. at 699–701.

## III. CONCLUSION

For the reasons explained above, the petition for a writ of habeas corpus is ALLOWED. Respondents shall IMMEDIATELY RELEASE Toyo Lara, i.e., no later than 3:00 p.m. today, Friday, October 16, 2026, subject to an order of supervision. 8 U.S.C. § 1231(a)(3).

Respondents shall not retaliate against Toyo Lara for filing this petition. Nothing in this Order precludes the respondents from pursuing Toyo Lara's removal, or from detaining him to effect that removal, provided the respondents follow all procedures required by law in doing so. Respondents shall file a status report, no later than Monday, October 19, 2026, confirming their compliance with this Order.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge